## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| **ANTHONY HARRIS** | * |
| | * |
| Plaintiff | * |
| v. | *   **Case No.: CAD11-19194** |
| **CASSANDRA BOSTON** | * |
| | * |
| Defendant | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### <u>OPINION AND ORDER OF COURT</u>

THIS MATTER CAME BEFORE THE COURT ON March 13, 14, and 29, 2012, on the

parties' Complaints for Absolute Divorce, Judge Hassan A. El-Amin presiding.  Plaintiff,

Plaintiff's Attorney, Defendant, and Defendant's Attorney were present.  Both Plaintiff and

Defendant sought an Absolute Divorce and reasonable attorney's fees, while Defendant also

sought alimony, a division of marital property, damages for conversion and fraud, and custody of

and child support for a minor child who is not the biological or adopted child of the parties.  In

addition, both parties submitted post-trial briefs.  The following determinations are made based

upon the trial testimony and evidence as well as the arguments made in those briefs.

## BACKGROUND

Plaintiff has been a resident of Prince George's County for at least one year prior to the August 9, 2011 filing of the Complaint for Absolute Divorce. Defendant is a resident of the Commonwealth of Virginia.

The parties were married June 17, 1995 in the Commonwealth of Virginia in a civil ceremony. The parties lived together as Husband and Wife in Virginia until November 17, 2006, when a domestic violence matter in District Court brought about the parties' physical separation. The parties have been continuously separated since that time without cohabitation. There is no hope or expectation that the marriage can be reconciled.

On August 9, 2011, Plaintiff Anthony Harris filed a Complaint for Absolute Divorce. On September 30, 2011, Defendant Cassandra Boston filed a Counter-Complaint for Absolute Divorce, requesting equitable child support, monetary award due to fraud and conversion of Cash Out Loans, alimony, division of marital property, and use and possession of the marital home located at 2104 Bermondsey Drive, in Bowie, Maryland.

### Custody and Child Support

There were no children born to the marriage, but the parties desired for Ms. Boston to become pregnant. Despite the assistance of fertility treatments, Ms. Boston could not get pregnant because of a tubectomy prior to the parties' marriage. However, the parties later discussed the possibility of adoption. The parties spoke with a woman who resided in the state

of Ohio about the possibility of adopting the woman's newborn child, Cipriana Sofia DeLeon. The parties obtained possession of the minor child, and brought the child to Maryland to live with them. Although the child's name was changed to Maria Cipriana DeLeon-Harris, no steps were taken by the parties to obtain legal custody of the child, or to commence adoption procedures for the child. In November of 2006, the parties separated and Mr. Harris vacated the marital residence, leaving Ms. Boston and the child in the marital home.

Mr. Harris's testified that prior to the separation, once it became evident the parties were headed for divorce, he advised Ms. Boston to return the child to her biological mother, as he had no intentions of pursuing the adoption process. In 2010, Ms. Boston petitioned the Ohio state courts for special legal guardianship of the minor child. Mr. Harris and Wife had been living separate and apart for approximately four years at this time. Mr. Harris did not participate in any capacity in the petition for guardianship of the child, Cipriana DeLeon-Harris. Ms. Boston was awarded sole legal guardianship of the child, and said Order contained an agreement between the biological mother of the child and Ms. Boston that there would be no payment of child support from the child's biological mother to Ms. Boston. There is no document evidencing a legal duty on Mr. Harris's part to care for or provide support to this child, who has both a biological mother and father, both of whom are known to the child.

**Parties' Financial Resources and Acquisition of Marital Assets**

During the period of the marriage while the parties resided together, Mr. Harris was self-employed through various companies including American Capital Contractors and American Capital Cleaners. Mr. Harris's businesses provided virtually all of the income earned by the parties during the period of the marriage while the parties resided together. Both parties testified that Ms. Boston sometimes worked for Mr. Harris and helped him intermittently with administrative tasks for the business, but she was never officially a W-2 employee. Ms. Boston testified that she received additional income through teaching at a private school during the 2003-2004 school year, where she earned approximately $700.00 bi-weekly. Mr. Harris testified that the parties filed joint taxes while they resided together and that he was the primary provider for the family, paying all of the parties' living expenses and other necessities. Ms. Boston agreed that Mr. Harris paid the mortgage and all of the other expenses associated with the household during said period.

Mr. Harris testified that his business, American Capital Contractors, suffered financial difficulties sometime around 2004 or 2005 and ultimately shut down in 2010. Ms. Boston testified that Mr. Harris borrowed money from her relative due to these financial difficulties. Mr. Harris produced bank statements for American Capital Contractors reflecting that the business accounts had very little money in them in 2010, and were eventually closed that same year.

After Mr. Harris vacated the marital home in June 2006, he continued to pay the mortgage on the marital home while Ms. Boston resided therein. Pursuant to the Consent Protective Order issued in June 2006, Husband would make mortgage payments for one year. However, because the home was in arrears, Mr. Harris obtained an equity line of credit with an available line of credit of approximately $90,000.00, using the equity on the marital home. Mr. Harris withdrew sums of money from this equity line of credit at various times between the years 2006 and 2010, which he states was used to not only to pay arrears but also to pay the ongoing mortgage payments. Mr. Harris offered documents into evidence which showed payments on the mortgage totaling $100,000.00, and testified that the source of these payments were the equity line of credit, and rental fees from tenants. Mr. Harris testified that Ms. Boston continued to reside in the home without paying any mortgage payments for 6 months past the term permitted in the protective order.

Ms. Boston testified that Mr. Harris dissipated marital funds by diverting $80,000.00 in cash from the former martial home through a November 2006 refinance transaction (the "Cash Out loan"). Ms. Boston had no knowledge of the transaction, did not consent to the transaction, and alleges that her signature was forged on a power of attorney document in which Ms. Boston purportedly gave Mr. Harris unfettered power to refinance the marital home. Additionally, witness Shari Smyth identified that her notary stamp and seal were on said document, even though she never personally notarized the document and was not in possession of her notary

stamp and the time the document was purportedly executed.

In late 2010, the property was listed for a short sale to which both Husband and Wife agreed in writing.  Ms. Boston signed an instrument purporting to preserve any rights she had to equity in the home, notwithstanding any outstanding liens or debts levied upon the property. When the house was sold via short sale, the parties were required to satisfy the two outstanding liens of the property. One was the equity line of credit ($90,000.00) and the other lien was a federal income tax lien in the amount of $24,935.00 which had been levied on the home during the period that the parties resided together. The home was titled to the parties as tenants by the entireties and therefore, the income tax debt was presumably levied against the parties, and their property, pursuant to a joint income tax debt owed and reported on a joint income tax filing. However, Ms. Boston alleges that Plaintiff diverted $38,000.00 of the proceeds to two creditors that were not her creditors, and that such diversion constitutes a dissipation of marital funds from which she is owed a monetary award.

**Personal Property**

The parties acquired several items of personal property during the marriage.  Pursuant to Maryland Rule 9-207, the parties filed a Joint Statement of Marital and Non-Marital Property. The following is a listing of the parties' stated Marital and Non-Marital Property:

| Husband's Property | Wife's Property | Marital Property |
|---|---|---|
| All items in Husband's possession | All of the furniture and furnishings in Wife's possession | Wife's retirement plan valued at approximately $5K |
| Coin collection (missing) | Wife's wedding ring (missing) | Wife's 2002 Lexus valued at approximately $9K |
| | | Husband's 2001 Mercedes valued at approximately $2K |
| | | Husband's retirement with his new employer valued at approximately $2500.00 |
| | | New home acquired by Mr. Harris in 2008 (known as 8200 Woburn Abbey Rd. in Glendale, Md). Purchase price: $649K. Current value: $450k ($200K negative equity) |

Upon going through the list of all items on the property lists and identifying the value of each item listed, as well as which items were in each parties' possession, it was determined that the assets which had a positive equity value totaled $30K. Of these items having a value of approximately $30K, Mr. Harris was in possession of approximately $10,500.00 worth of these assets and Ms. Boston was in possession of assets worth approximately $19,500. However, because Mr. Harris's real property located at Woburn Abbey Road has a negative equity value of (-$200K), the net value of the parties' marital property is -$170K.

Included in the table above is Ms. Boston's wedding ring, which Ms. Boston alleges Mr. Harris instructed her to turn over for liquidation in order to pay for the mortgage on the marital home. Ms. Boston notes that the mortgage payments were at issue only because Mr. Harris diverted $80,000.00 from the equity of the home, and therefore, she seeks reimbursement of the

value of the ring ($4,995.00) under a dissipation theory.

## Parties' Present Income and Expenses

Mr. Harris is currently employed by Comcast and earns approximately $45K annually. Husband also reports additional income from a contract with Martha's Table through his self-employment from his newly formed business. This contract reportedly provides the business with $200.00 per month in income after paying the employees who service that contract.

Ms. Boston is currently employed by Trinity University as an Administrative Assistant and earned a salary of $38,600.00 in 2011.

Mr. Harris has a bachelor's degree. Ms. Boston has been attending college on a part-time, intermittent basis for the past seven years but has not yet completed her degree.

Ms. Boston currently resides in a home with her cousin in Ft. Washington, MD where she pays $500.00 per mo as rent to her cousin, but would like to move her and her daughter to a neighborhood where rent is $1500.00 per month for a 2 bedroom apartment. Mr. Harris resides in the property located at Woburn Abbey Rd and reports that he requires assistance to make his $2,200.00/month mortgage payment.

Both parties submitted financial statements to the Court. Ms. Boston submitted an Amended Financial Statement after the second day of trial to reflect additional expenses she purported to have and to delete some expenses which were reflected on her original statement which she testified were not, in fact, actual expenses which she paid. Ms. Boston's original

Financial Statement reflected a $632.00/month deficit; however, she testified that approximately

$800.00 /mo of those expenses were no longer being paid by her or no longer existed. Included

on that financial statement was the $500.00 monthly expense associated with a loan in Ms.

Boston's name, for a vehicle which was acquired by Ms. Boston for a male friend who was

unemployed at the time of the hearing. Ms. Boston's Amended Financial Statement reflected an

$1100.00 monthly deficit. It included new life insurance policies that had recently been taken out

by Ms. Boston, as well as other new additional expenses which had just recently been incurred

by Ms. Boston, to include monthly payments of $458.00 for her attorney's fees. Mr. Harris's

financial statement shows approximately a $1500.00 monthly deficit after paying all of his

necessary living expenses. Mr. Harris also testified that he is currently behind on paying his

mortgage.

**Attorney's Fees**

Ms. Boston testified that she had approximately $15,000.00 in attorney's fees and took

out a loan in 2007 to pay said attorney's fees. These fees include costs associated with drafting

legal documents related to the short-sale of the marital home, a Domestic Violence matter in

District Court occurring in 2006, and a separate divorce action dismissed by this Court in 2010.

Mr. Harris testified that his attorney's fees incurred directly as a result of the instant divorce

matter were in excess of $15,000.00.

## CONCLUSIONS OF LAW

### Custody and Child Support

Under section 12-202 of the Family Law Article of the Annotated Code of Maryland, a court shall use the child support guidelines in any proceeding to establish child support for a child of the marriage or a child for whom the parties owe a duty of support. The court has determined in this matter that there is no authority for the court to either decide custody or award child support, because Ms. Boston unilaterally undertook steps to obtain legal guardianship over the child four years after the parties' had separated.  Though Husband had contributed to the child's financial needs at one time, an individual's willingness to assist with a child's financial support in the past does not obligate that person, without any legal obligation, to continue such contributions in the future.  Thus, since the minor child in question is not the biological child of Mr. Harris, and has not been adopted by Mr. Harris, Mr. Harris owes no duty of child support for the minor child in this matter, namely, Cipriana Maria DeLeon-Harris.

### Alimony

Ms. Boston has made a request for alimony. Under present statutes, the principal function of alimony is rehabilitation. Therefore, in addition to considering the factors outlined in the

Annotated Code of Maryland, Family Law Article, section 11-101 *et seq.*, the Court must

consider the ability of the party seeking alimony to be wholly or partially self-supporting and the

time deemed necessary for that party to find suitable employment. *Holston v. Holston*, 58

Md.App. 308, 473 A.2d 459 (1984). *Holston* goes on to explain that "… the concept of

alimony….enabling the financially dependent spouse to maintain an accustomed standard of

living has largely been superseded by the concept that the economically dependent spouse should

be required to become self-supporting, *even though that might result in a reduced standard of*

*living*" (emphasis added). Ms. Boston in the instant matter has based her request for alimony on

the fact that her current position does not allow her to cover her expenses, and that her position

does not provide for any significant advancement potential without first completing a two-year,

full-time certificate.  She cannot afford to live alone and stays with relatives, while Plaintiff's

home sits on a 48,000 square foot parcel of land.

In a situation where Ms. Boston is determined not to be self-supporting, the court is

required to make the determination that the party from whom alimony is sought has the ability to

meet his own needs while meeting the needs of the party seeking alimony. Annotated Code of

Maryland, Family Article, §11-106(b)(9). In the instant matter, Mr. Harris testified that he was

able to pay his own monthly bills only because he had a friend who was contributing to his

monthly expenses on a regular basis. He further testified that he was behind on his mortgage and

would have to seek a modification of the mortgage loan. Husband's financial statement reflected

a monthly deficit of over $1500.00. However, he also admits to stating that his income was

$35,000.00 per month, or $420,000.00 per year, on the loan application for the Cash Out loan.

This Court firmly believes that Mr. Harris has significantly understated his current

income. There is a tremendous discrepancy in the monthly earning he reported earnings he

reported to the Court, $4,500.00 per month, and the $35,000.00 per month he reported in his

Cash Out loan application. His self-employment has made it relatively easily to conceal his

actual income; but based on the way he manipulated real dollars and income numbers on paper,

this Court believes that Mr. Harris is easily able to pay rehabilitative alimony so that Ms. Boston

can resume her college education and/or vocational training—to achieve a standard of living not

unconscionably disparate from that of Mr. Harris—and therefore, an award of alimony is

appropriate.

## Marital Award

Ms. Boston has made a request for a marital award in the amount of approximately

$80,000.00. The basis for this request is that Mr. Harris took out an equity line of credit levied on

the parties former marital home in the year of 2006 (the "Cash Out loan"), which then had to be

paid off at the time the house was disposed of by short sale in 2010. Additionally, an IRS income

tax lien incurred by the parties during the marriage had been levied upon the marital home and

was required to be paid off, as well, in order for the parties to sell the home pursuant to the short

sale in 2010. At the time this divorce action was filed, the marital home in question had already

been disposed of by short sale, and the debts which were levied upon the home had been paid off

as a condition of the sale of the home. After the payment of the debts levied upon the marital

home, there was no equity left to be distributed to the parties. The only assets existing at the time

of the filing of the divorce were the personal property items outlined on the parties' financial

statements and Mr. Harris's current residence which has a negative equity value. It is Ms.

Boston's contention that payment of the marital debts, including the equity loan on the marital

home and the IRS income tax debt, constituted dissipation of marital assets by Mr. Harris.

It is established law that dissipation may be found where one spouse uses marital

property for his or her own benefit for a purpose unrelated to the marriage at a time where the

marriage is undergoing an irreconcilable breakdown. *McCleary v. McCleary*, 150 Md.App. 448,

822 A.2d 460 (2002).  With respect to the argument put forth by Ms. Boston that there was a

dissipation of marital assets, the moving party has the initial burden of production and the initial

burden of persuasion.  The moving party must first establish a <u>prima facie</u> case that the money

had been dissipated for the purpose of denying the Court the ability to divide the asset in the

divorce.  Once that burden has been met, the burden shifts to the other party to show that the

expenditure was for a marital purpose. *Collins v. Collins*, 144 Md. App. 395, 412-413, 798 A.

2d 1155 (2002), *McCleary v. McClearly*, 150 Md. App. 448, 462-463, 822 A.2d 460 (2003).  In

the instant matter, Husband acknowledges that he withdrew funds from the equity line of credit

on the home, resulting in an outstanding lien on the home for the amount of the available equity line. However, Mr. Harris also testified, and submitted actual documents evidencing the use of said monies to pay off the outstanding arrears on the mortgage, as well as to pay the ongoing mortgage during the four year period after the parties' separation, up until the time of the sale of the home. Payment of mortgage arrears, and payment of the ongoing joint marital obligation of the marital home's mortgage can hardly be characterized as a purpose "unrelated to the marriage". Id., see *McCleary* at 150 Md.App.448, 150 A.2d 460 (2002). Likewise, payment of an income tax lien on the marital property, for unpaid taxes on income earned by Mr. Harris while the parties were living together and Ms. Boston was not working, cannot be characterized as usage "unrelated to the marriage" when such untaxed income clearly had been used for the benefit of the family, while they still lived together. Thus, however surreptitious the actions of Mr. Harris may have been, no dissipation can be determined by the payment of the liens on the marital property which were debts associated primarily with preservation of the marital property and which were required to be paid in order for a sale of the marital home to occur.

Having established that there exists no dissipation of property by Mr. Harris, the Court must next undertake a three-step process to determine an appropriate marital award: First, for each disputed item of property, the court must determine whether it is marital or non-marital. Second, the court must determine the value of all marital property. Third, the court must determine if the division of marital property according to title will be unfair and if so, the court

may make an award to rectify the inequity. *Collins v. Collins*, 144 Md.App. 395, 798 A.2d 1155

(2002). In the instant case, the court has valued the personal property at approximately

$35,000.00 based on the items outlined on the parties' Joint Property Statements. Of that amount,

roughly $24,500.00 of the personal property items have remained or should have remained (i.e.

Ms. Boston's wedding ring) in Ms. Boston's possession. Only about $10,500.00 worth of the

personal property items are title to Mr. Harris or are in Mr. Harris's possession.

A coin collection valued at approximately $30K was reported "missing" at the time the

parties determined how best to divide their marital property. Both parties testified that the coin

collection was left in the marital home when Mr. Harris initially vacated the home. Ms. Boston

says it is her belief that Mr. Harris may have taken it at some point after the parties separated,

while Mr. Harris states that he left the coin collection when he vacated the home and he never

took the collection from the home at any point thereafter. For purposes of the value of the

marital property, the Court cannot consider the coin collection because neither party provided

sufficient evidence of said items being improperly dissipated by the other party. For this reason,

the total value of the marital estate is determined to be negative $165,000.00. This is as a result

of the $35,000.00 in personal property items and the negative $200,000.00 in real property titled

to Mr. Harris at his current residence. Therefore, after applying step two of the formula for

determining the appropriateness of a marital award, the court has determined that the value of

marital property is negative $165,000.00. The Annotated Code of Maryland, Family Law Article,

section 8-201 to 8-213 is the statute permitting for equitable distribution of marital property, "…
is dependent upon certain circumstances, and is not effective in all circumstances; for example, it
is of only limited effect where there is insufficient marital property from which to make an
appropriate monetary award." *Jandorf v. Jandorf*, 100 Md.App. 429, 641 A.2d 971 (1994). In
*Jandorf*, where there was not sufficient marital property to make a monetary award as requested
by Ms. Boston, the Court stated that "…A monetary award can only be made from marital
property if there is insufficient marital property in this case from which to make an appropriate
award." Since the function of a monetary award is to adjust the parties' equities in the marital
property, it is elemental that a court cannot exceed the total value of the marital property
…and… if the spouse to whom the court intends to grant a monetary award already owns (and
thus will retain) any marital property, the award cannot exceed the value of the marital property
owned by the other spouse". *Ward v. Ward*, 52 Md.App. 336, 343, 449 A.2d. 443 (1982).
Therefore, in this case, the Court is precluded from granting any marital award because the total
value of the parties' marital property is a negative value.

## Punitive Damages for Fraud and Conversion

Ms. Boston alleges that both fraud and conversion theories are applicable in this case.
With respect to fraud, it is alleged that Mr. Harris forged Ms. Boston's power of attorney on two
occasions: First, in order to complete the $80,000.00 Cash-Out transaction; and second, to

transfer $38,000.00 of proceeds from the 2010 short sale of the Bermondsey residence to two creditors with whom Ms. Boston had no privity of contract after the parties separated.

In order to recover on a claim for fraud, Ms. Boston must show that (1) Mr. Harris made a false representation; (2) its falsity was either known to Mr. Harris or the misrepresentation was made with such reckless indifference to the truth as to be equivalent to actual knowledge; (3) it was made for the purpose of defrauding the person claiming to be injured thereby; (4) such person not only relied upon the misrepresentation, but had a right to reply upon it in the full belief of its truth, and would not have done the thing from which the injury had resulted had not such misrepresentation been made; and (5) such person actually suffered damage directly resulting from the fraudulent misrepresentation. *Parker v. Columbia Bank,* 91 Md. App. 346, 352 (1992).

Ms. Boston has adduced facts sufficient to prove fraud and conversion. First, the evidence clearly shows that Mr. Harris forged Ms. Boston's power of attorney, which represents a knowingly false misrepresentation to the lender concerning Ms. Boston's agreement to the transaction. The misrepresentation was made for the purpose of stripping the Bermondsey equity from Ms. Boston, which indeed happened but would not have been authorized had Ms. Boston had the appropriate knowledge. She relied, to her detriment, on the fact that her identity would not be forged so as to complete the transaction at issue. Due to Mr. Harris's forgery, the aforementioned funds were transferred without Ms. Boston's approval or consent.

Second, in order to recover under a theory of conversion, Ms. Boston must show that there was both (1) a physical act to exert dominion or ownership over the personal property of Ms. Boston which was inconsistent with her rights, and (2) that Mr. Harris intended to exercise

such dominion or control. *Keys v. Chrysler Credit Corpo.,* 303 Md. 397, 414, 494 A.2d 200, 208 (1985).

While Mr. Harris does not admit to the forgery, he concedes that the monies from the Cash Out proceeds effectively depleted the equity from the Bermondsey property before short sale. Moreover, Mr. Harris admits that he had sole control over the Cash Out proceeds, thus establishing the first prong of Ms. Boston's conversion claim. This action, coupled with the testimony that he intended to deplete the equity of the home prior to short sale, satisfies the factual basis required to succeed on a claim of conversion.

In her Counter-Complaint (*See* counts III and IV) and in her post-trial memorandum (*See* pp 8-10), Ms. Boston has requested an award for punitive damages stemming from this fraud and conversion. Punitive damages are appropriate when there is evidence of actual malice. Actual malice has been defined by the Court of Appeals of Maryland as "actual knowledge of falsity, coupled with [an] intent to deceive." *Ellerin v. Fairfax Savings,* 334 Md. 216 (1995). In this case, Mr. Harris's fraudulent conversion of Ms. Boston's interests in their marital property does indeed show actual malice. Mr. Harris concedes that he gained sole control over the Cash Out proceeds; however, this control was achieved only by forging Ms. Boston's power of attorney. Witness Shari Smyth identified her notary stamp and seal on the power of attorney documentation, and testified that she had not had her stamp in her possession since 1998, that she was not present to notarize the document, and that Ms. Boston did not sign the document in Smyth's presence. Clearly, Mr. Harris misappropriated (or outright stole) Smyth's notary public seal. Though Mr. Harris does not admit to the forgery, he concedes that the monies from the Cash Out proceeds effectively depleted the equity from the Bermondsey property before short sale. Thus, the evidence of the falsity of the document, coupled with the testimony that he

intended to deplete the equity of the home prior to short sale, is sufficient to establish that punitive damages are appropriate.

### Attorney's Fees

Both parties have made a request for attorney's fees. Factors to be considered in an award of attorney's fees are whether there was justification for maintaining or defending the action, and the economic circumstances of the parties.  See, A.C.M., Family Law Article, Section 11-110(c). While the divorce is being granted on no fault grounds of twelve-month separation, it is undisputed that Mr. Harris committed adultery during the marriage, which resulted in a child who currently lives in Colorado.[1]  It is also undisputed that Ms. Boston Ms. Harris obtained a domestic violence protective order in November 2006.   Mr. Harris first filed for divorce, and Ms. Boston was required to hire an attorney to not only represent her and file responses to Mr. Harris's pleading, but also to do a considerable amount of discovery with respect to the fraudulent conversion and misappropriation of marital funds.

With respect to economic ability of the parties to pay their attorney's fees, Husband's documentation from his loan application stated that he earned $35,000.00/month, while Wife's salary is $40,000.00/year.  Thus, despite his unconvincing claim that he earns only $4,500 a month and is struggling to make ends meet, there is evidence that Mr. Harris' economic resources are substantially deeper than Ms. Boston's.  Therefore, Ms. Boston was justified in making a request for attorney's fees, and a contribution of Fifteen thousand dollars ($15,000.00) to help cover her attorneys' fees—which the Court finds eminently reasonable, given the length and complexity of this domestic litigation—is appropriate.

---

[1]  Mr. Harris' seemed to want the Court to believe that what really led to the parties' alienation (and, incidentally, somehow mitigated his adulterous affair) was Ms. Boston's concealment of her infertility or at least the *extent* of her infertility.  In this attempt he was totally unsuccessful.

to help cover her attorneys' fees—which the Court finds eminently reasonable, given the length and complexity of this domestic litigation—is appropriate.

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

**ANTHONY HARRIS**                  *
                               *
Plaintiff                          *
                               *
                               *   Case No.: **CAD11-19194**
                               *
**CASSANDRA BOSTON**                *
                               *
Defendant                          *
********************************************************************************

## ORDER AND JUDGMENT OF ABSOLUTE DIVORCE

ACCORDINGLY, it is this __13th__ day of __August__, 2012, by the Circuit Court for Prince George's County, Maryland,

**ORDERED**, that the Plaintiff, Anthony Harris, be and hereby is granted an Absolute Divorce from Defendant Cassandra Boston; and it is further,

**ORDERED**, that Defendant's request for child support be and hereby is DENIED; and it is further,

**ORDERED**, that Defendant's request for alimony be and hereby is GRANTED. Plaintiff must pay Defendant alimony in the amount and at the rate of two thousand dollars ($2,000.00) per month for three years (36 months), beginning September 1, 2012 and continuing on the first day of each month thereafter; and it is further,

**ORDERED**, that Defendant's request for a monetary award be and hereby is DENIED as there is not sufficient marital property from which to make a marital award; and it is further

**ORDERED**, that Plaintiff's request for attorney's fees be and hereby is DENIED; and it is further

**ORDERED,** that Defendant's request for a contribution towards attorney's fees be and hereby is GRANTED. Plaintiff must pay Defendant fifteen thousand dollars ($15,000.00) for her attorney's fees. At a minimum, Plaintiff shall pay Defendant One Thousand Dollars ($1,000) per month for fifteen (15) months beginning September 1, 2012 and continuing on the first of each month thereafter until paid in full; and it is further

**ORDERED,** that Defendant/Counter-Plaintiff Boston be and is hereby awarded the sum of Sixty Thousand Dollars ($60,000) in punitive damages against Plaintiff Counter-Defendant, due to his fraudulent conversion of $80,000.00 from the parties' home equity line and $38,000.00 in payment to the IRS and Falso Solutions, Plaintiff's creditors. If said award is not paid within six (6) months of the date of this Order, the amount owed may be reduced to a judgment against the Plaintiff, with interest accruing at the post-judgment rate from the date of this Order; and it is further

**ORDERED**, that this case be closed for statistical purposes only.

Judge Hassan A. El-Amin
Circuit Court for Prince George's County, MD

**Copies mailed by the Court to**:

Edith Lawson-Jackson, Esquire
10111 M. L. King Jr. Hwy., Suite 200F
Bowie, MD 20720
Attorney for Plaintiff

Kerry Davidson, Esquire
1738 Elton Road, Ste 113
Silver Spring, MD 20903
Attorney for Defendant

## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| **ANTHONY HARRIS** | * |
| | * |
| Plaintiff/Counter-Defendant | * |
| | * |
| vs. | *  **Case No.: CAD11-19194** |
| | * |
| **CASSANDRA BOSTON** | * |
| | * |
| Defendant/Counter-Plaintiff | * |

### OPINION AND ORDER OF COURT

Procedural Background

This matter originally came before the Court for a three-day merits hearing on March 13,

14, and 29, 2012 on Plaintiff ANTHONY HARRIS' ("Mr. Harris") Complaint for Absolute

Divorce, filed on August 9, 2011, and Defendant CASSANDRA BOSTON's ("Ms. Boston")

Counter-Complaint for Absolute Divorce, filed on September 30, 2011. Both parties appeared,

Mr. Harris then represented by Edith Lawson-Jackson, Esquire, and Ms. Boston represented by

Kerry Davidson, Esquire. Mr. Harris' Complaint sought divorce on grounds of a two-year

separation, while Ms. Boston countered with a complaint requesting child support, alimony,

division of marital property, use and possession of the marital home, as well as conversion and

fraud claims due to Mr. Harris' alleged forgery of Ms. Boston's signature on financial documents

related to the marital home. On August 13, 2012, the Court issued its written Opinion and Order

based on the March 2012 hearings and on supplementing briefs, granting Mr. Harris an absolute

divorce from Ms. Boston. Based upon Ms. Boston's standard of living, lack of training, and Mr.

Harris' understatement of his earnings, the Court awarded Ms. Boston alimony of $2,000.00 per

month for three years beginning September 1, 2012. On Ms. Boston's request for a monetary

award due to the alleged dissipation of marital funds by Mr. Harris, this Court found that

Page **1** of **11**

e5-7-15

although Mr. Harris' actions were surreptitious, there was not a dissipation of marital funds because the funds from the Cash Out loan were primarily used for purposes related to the marriage and preservation of the marital property. The total value of the parties' marital property was a negative value and the Court did not grant a marital award. This Court did, however, find that Mr. Harris committed fraud and conversion by forging Ms. Boston's Power of Attorney and taking out the Cash Out home equity line of credit without Ms. Boston's knowledge or consent. This represented a knowingly false misrepresentation to the lender concerning Ms. Boston's agreement to the transaction and effectively led to the depletion of equity of the home prior to the short sale. Mr. Harris subsequently made a $38,000.00 payment to the IRS and Falso Solutions, creditors whom he owed individually and unrelated to Ms. Boston. This Court concluded that the forged notary stamp, combined with Mr. Harris' testimony that he intended to deplete the home equity, was sufficient evidence of actual malice to establish that punitive damages were appropriate, and it awarded $60,000.00 in punitive damages to Ms. Boston. The Court also awarded attorney's fees to Ms. Boston in the amount of $15,000.00. Mr. Harris filed a motion to alter or amend the judgment on August 29, 2012, which the Court denied on November 26, 2012. Mr. Harris filed a notice of appeal to the Court of Special Appeals on September 12, 2012.

In an opinion filed May 7, 2014, the Court of Special Appeals (COSA) vacated this court's award of punitive damages to Ms. Boston and affirmed all other judgments made by this court. The COSA opined that it was unable to determine whether the absence of a compensatory damage award was an oversight or deliberate act of this court, leading the COSA to vacate the punitive damages award and ordering a remand to this court for a calculation of the compensatory damages Boston suffered as a result of Harris' fraud, and conversion, if any.

COSA Opinion at 23. If compensatory damages are awarded, then the punitive damages should be recalculated. *Id.* If compensatory damages are not awarded on remand, then Boston will not be entitled to punitive damages. *Id.*

On August 6, 2014, the Parties were again before the Court for a status hearing following the COSA remand. Mr. Harris was represented by Daniel V. Renart, Esquire and Ms. Boston was represented by Kerry J. Davidson, Esquire. The Court heard argument on Mr. Harris' Motion to Disqualify the undersigned judge, said motion having been filed July 11, 2014. The Court denied the motion. The Parties were again before the Court over the course of the following five days: September 30, 2014, October 1, 2014, November 24, 2014, November 25, 2014, and January 7, 2015. At issue were the COSA's remand, Mr. Harris' Motion to Modify/Terminate Alimony filed August 6, 2014, and Motion to Dismiss Compensatory Damages Issue filed September 24, 2014, as well as Ms. Boston's Fourth Petition for contempt, Motions to Extend/and or Increase Alimony, Strike Mr. Harris' Motion to Modify/Terminate Alimony, Pierce the Corporate Veil to Enforce Pending Judgment, and Modify Judgment, all of which were filed on August 22, 2014. Ms. Boston also filed a Motion for Attorney's Fees on September 5, 2014.

During the September 30, 2014 hearing, the Court determined that an award for compensatory damages was not warranted, thereby granting Mr. Harris' Motion to Dismiss Compensatory Issues. The Court also denied Ms. Boston's Motion to Strike Mr. Harris' Motion to Modify/Terminate Alimony. On October 10, 2014, Ms. Boston filed a Motion for Reconsideration of this Court's September 30, 2014 determination that it would not award compensatory or punitive damages. During the November 25, 2014 hearing, the Court denied

Ms. Boston's Motion for Reconsideration. After the last hearing on January 7, 2015 the Court reserved ruling on the pending motions and took the case under advisement.

Alimony

The Court may modify an award of alimony if circumstances and justice require. Md. Family Law §11-107. Alimony terminates if the court finds that termination is necessary to avoid a harsh and inequitable result. Md. Family Law §11-108. Mr. Harris, through testimony and motions, has alleged that circumstances have necessitated the need to terminate alimony in order to avoid a harsh and inequitable result. In particular, Mr. Harris indicated that his income from his employment with Comcast has reduced 21.96 percent (%) since spousal support was awarded in 2012, that a physiological attack in spring of 2014 negatively impacted his income, and that he is delinquent in the payment of his residential mortgage by at least $29,350.30 as of July 1, 2014, thus turning his residence into "a house of cards waiting to collapse". Mr. Harris' representation of his alleged impoverishment is contradicted in light of the evidence presented by Ms. Boston. Between January 2012 and September 2013 deposits totaling approximately$622,000.00 were made to ACC's TD Bank account, to which Mr. Harris has had access to as evidenced by his use of the account for several personal expenses such as transactions at personal grooming and dry cleaning establishments. The testimony of Artis Johnson, purported owner of ACC, corroborated the assertion that Mr. Harris has access to the ACC TD Bank account and that Mr. Harris' use of ACC funds was in the form of "loans" and that an ongoing "verbal agreement" exists regarding said "loans". Considering the pattern of Mr. Harris' use of the ACC TD Bank account and Ms. Johnson's testimony, the Court is convinced that Mr. Harris is still receiving funds directly from or has access to ACC funds. The Court is not convinced that termination of alimony is necessary in this case to avoid a harsh and

inequitable result. Reciprocally, the Court finds that Ms. Boston's Motion to Increase Alimony is unjustified because her expenses are compounded by the family obligations that she has voluntarily undertaken, mainly in the form of the assistance provided to her niece, Brittany Graves, and her niece's children and brother, all of whom currently reside with Ms. Boston. Considering the forgoing, there is no basis for modification of spousal support or for an extension of the period of time granting spousal support. As of March 1, 2015, the amount of accrued unpaid spousal support was $30,756.38 ($60,000 (30 months) minus $29,243.62 (payments made)).

### Corporate Veil

The corporate veil may be pierced in cases where there is fraud, when necessary to prevent fraud or to enforce a paramount equity. *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 31 (1975). The Court may pierce the corporate veil where it is necessary to prevent fraud by entering a judgment against the corporation used to perpetrate the fraud. *Ramlall v. Mobilepro*, 30 A.3d 1003, 1010 (Md. App. 2011). Here, Mr. Harris' 2006 Cash Out mortgage loan, which was used to deplete the parties' home equity, was obtained using his ACC business income as the basis for the loan. Mr. Harris contended that ACC was nonexistent in 2006 but the testimony and evidence suggest otherwise. Ms. Boston testified that she worked for ACC as a cleaner and bookkeeper during her marriage to Mr. Harris (parties were married from 1995-2008), testimony from Father Milton Jordan of St. Mathias Church elicited that ACC performed services for St. Mathias for approximately 10 years before it was terminated in September 2014, and ACC's website in 2014 described itself as the "leader… in the Washington, DC area since 2000". Moreover Mr. Harris concealed control and ownership of ACC by "selling" the company, which on average deposited hundreds of thousands of dollars annually, to

office manager Artis Johnson for a nominal amount (Ms. Johnson testified that the sale price was $7,500.00 but her testimony conflicts with the ACC Sale Document stating that the sale price was $5,000.00). In fact, Ms. Johnson admitted that she never paid the proceeds to Mr. Harris for the purported "sale" of ACC. Contrary to Mr. Harris' explanation that ACC provided him with "loans" after the sale of the company, the record is clear that Mr. Harris continued to have access to and use of ACC assets to fund his personal expenses. Artis Johnson's in-court testimony indicated that she was an employee and not owner of ACC as purported. Ms. Johnson's testimony demonstrated that she was unaware of any of ACC's corporate formalities. She could not identify large deposits made to the TD Bank account, and she was unaware that over $60,000.00 had been deposited into the account in September 2014. Furthermore, Father Milton Jordan's unimpeached testimony revealed that Mr. Harris was the "face" of ACC, as it was his understanding that Mr. Harris was always the "point person" for ACC. Moreover, at trial, Mr. Harris himself conceded that he deposited his Comcast wages into the TD Bank ACC business account, from March 2014 to August 2014, after the garnishment of his Citibank account, demonstrating his exercise of control over the account. ACC was used as an alter ego to shield Mr. Harris' assets and protect him from satisfying any judgments awarded against him. Specifically, this Court is convinced that Mr. Harris misrepresented the extent of his control and ownership of ACC funds, that Mr. Harris is still in fact in control of the ACC business, and that the conveyance of ACC ownership to Artist Johnson was done with the intent of avoiding and shielding enforcement of any judgment awarded to Ms. Boston or to other creditors. Accordingly, this Court finds sufficient evidence to pierce the corporate veil of ACC.

## **Attorneys' Fees**

The Court is authorized to award litigation costs and attorneys' fees where the Court makes a finding that a litigant acted in bad faith or without substantial justification. Md. Rule 1-341. Here, Mr. Harris deposited his employment wages from Comcast into ACC's TD Bank account and then claimed that he had no access to the account in order to avoid attempts of collection. Mr. Harris' bad faith attempt to conceal his access to the TD Bank account and his attempt to obscure his control and or ownership of ACC in order to prevent collection of judgments against him justify an award for attorneys' fees. Although the Court finds that proceedings were conducted in bad faith by Mr. Harris at trial, it does not find that all of Mr. Harris' claims on appeal to the COSA were conducted in bad faith. In awarding attorneys' fees in favor of Ms. Boston this Court is cognizant of the parties' financial resources and enters a reasonable attorney's fees judgment consistent with Md. Code, Family Law § 11-110(c). Though the Court is convinced that Mr. Harris has access to funds greater than those presented throughout trial, the Court does not believe that Mr. Harris' financial resources are boundless enough to support the large amount of attorneys' fees, $183,800.44, demanded by Ms. Boston. It is the Court's opinion that such an award would be disproportionate to the economic standard and complexity of the case and punitive in effect. However, the Court is persuaded that an award of $95,000.00 in attorneys' fees is justified based on the billing statements of Ms. Boston's attorney.

### Contempt

Power vests in the Court to punish for contempt of court or to compel compliance with its commands. Md. Code Ann., Cts. & Jud. Proc. § 1-202. Ms. Boston filed her Fourth Petition for Contempt alleging Mr. Harris' failure to pay monthly alimony in the amount of $2,000.00 as

ordered by this Court and requesting Mr. Harris is incarcerated for the current alimony arrearage of $30,756.38. Although alimony payments have not been timely made on a consistent basis by Mr. Harris, there has been compliance by Mr. Harris as demonstrated by the $29,243.61 in total alimony payments as of February 9, 2015. Considering Mr. Harris has made alimony payments, some voluntarily, and that there currently exists an earnings withholding order to garnish his Comcast wages, the Court does not believe that there has been a willful disregard of the Order to pay alimony nor justification to enforce incarceration of Mr. Harris.

# IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

ANTHONY HARRIS                          :
                                        :
    Plaintiff/Counter-Defendant       :
                                        :
    v.                                :         Case No. CAD11-19194
                                        :
CASSANDRA BOSTON                        :
                                        :
    Defendant/Counter-Plaintiff       :


## ORDER

Based on the foregoing OPINION, it is this _29th_ day of _April_ , 2015,

by the Circuit Court for Prince George's County, Maryland, hereby

    ORDERED that Mr. Harris' Motion to Modify/Terminate Alimony is DENIED; and it is

further

    ORDERED that Mr. Harris shall pay alimony in the amount of $2,000.00 per month to

Ms. Boston for three years from September 1, 2012 through August 2015. Judgment is entered

against Mr. Harris for alimony arrearage for 30 months in the amount of $30,756.38 (this amount

credits the total $29,243.61 already paid by Mr. Harris) as of March 1, 2015; and it is further

    ORDERED that any assets owned by ACC are hereby subject to levy for the purpose of

satisfying any judgment or award against Mr. Harris in this case; and it is further

    ORDERED, that ACC includes "ACC Affiliates", which shall be defined as any

company owned, managed, or controlled by Anthony Harris that performs cleaning services in

whole or in part; and it is further

ORDERED, that any companies performing cleaning services that are managed, owned or controlled, in whole or in part, by Artis Johnson or Lauren Miller shall be deemed controlled by Mr. Harris and deemed ACC Affiliates; and it is further

ORDERED, that any accounts receivable or other funds of ACC may be attached to satisfy the Award as authorized under Maryland Rule 2-651, and that any nonparty holding ACC funds shall immediately remit said funds directly to Ms. Boston's attorney escrow account and file an answer with this Court, at which point Maryland Rules concerning levies shall apply; and it is further

ORDERED, that Ms. Boston is authorized to attach any ACC funds of TD Bank that were transferred to bank accounts owned in whole or in part by Lauren Miller and/or Artis Johnson since the August 22, 2014 filing of Ms. Boston's Motion to Pierce the Corporate Veil; and it is further

ORDERED, that ACC be immediately enjoined from removal or transfer of any ACC funds from any bank accounts until all judgments in this matter have been satisfied; and it is further

ORDERED, that attorneys' fees in the amount of $95,000.00 are awarded to Ms. Boston; and it is further

ORDERED, that judgment is entered in the amount of $125,756.38 (including alimony and attorneys' fees) in favor of Ms. Boston and against Mr. Harris; and it is further

ORDERED, that this matter be closed for statistical purposes.

Hassan A. El-Amin
Judge, Circuit Court for Prince
George's County, Maryland

TRUE COPY—TEST—

CLERK

Page 10 of 11

Copies to:

Counsel of Record

ATTACHMENT 3

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

ANTHONY HARRIS                          :
                                        :
    Plaintiff/Counter-Defendant   :
                                        :
    v.                            :       Case No. CAD11-19194
                                        :
CASSANDRA BOSTON                        :
                                        :
    Defendant/Counter-Plaintiff   :

## SUPPLEMENTAL ORDER

This Court hereby modifies its May 7, 2015 Order and Opinion to include the following:

The attorneys' fee award in this matter against Plaintiff/Counter-Defendant Anthony Harris is INCREASED by an additional $19, 125.00, to reflect the $15,000.00 unpaid award of August 12, 2013, plus interest of $4,125.00 from this date. The total attorneys' fee award in this matter shall thus be increased from $95,000.00 to **$114,125.00**, and the total judgment in this matter, including alimony due to Defendant/Counter-Plaintiff Cassandra Boston, shall be increased from $125,756.38 to **$144,881.40**.

It is so ordered.

Hassan A. El-Amin
Judge, Circuit Court for Prince
George's County, Maryland

Page 1 of 1



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | Case No.   15-21296-TJC |
| Anthony Harris | * | Chapter   7 |
| Debtor | * | |
| *   *   *   *   *   *   *   * | * | |
| Cassandra Boston | * | |
| Movant | * | |
| vs. | * | ECF nos. 11, 20 |
| Anthony Harris | * | |
| Respondent | * | |
| *   *   *   *   *   *   *   *   *   *   *   *   * | | |

### MEMORANDUM AND ORDER GRANTING IN PART AND
### DENYING IN PART RELIEF FROM THE AUTOMATIC STAY

Movant Cassandra Boston filed a motion for relief from the automatic stay seeking relief
to enforce certain judgments she obtained in her divorce proceeding from the debtor Anthony
Harris.  Movant holds judgments in the amount of $30,756.38 for unpaid alimony (the "Alimony
Judgment") and $144,881.40 for attorneys' fees (the "Fee Judgment"), both of which were
awarded in the divorce case by the Circuit Court of Prince George's County, Maryland.  The
debtor opposes the motion.  The court held a hearing on the motion on September 28, 2015.

1

Prior to the petition, movant levied on approximately $22,000 in customer receivables (the "ACSG Funds") from American Capital Service Group, LLC, an affiliate of American Capital Contractors and American Capital Cleaning, Corp., the debtor's companies.  Movant also levied on approximately $20,000 in funds allegedly in the debtor's tax-qualified, defined-contribution pension (the "401(k) Funds").  Movant also holds funds from garnishing small amounts of the debtor's wages.

Movant seeks relief from the automatic stay to disburse the levied and garnished funds toward the satisfaction of the Alimony Judgment and the Fee Judgment and to allow wage garnishments to continue.  In addition, anticipating continued efforts to hamper her collection of the judgments, movant seeks relief from the stay to return to the Circuit Court for further relief in connection with the collection or enforcement of the Alimony Judgment or the Fee Judgment. The debtor opposes lifting the automatic stay because he argues that the Fee Judgment is not a domestic support obligation, as defined in 11 U.S.C. §101(14A), and is subject to discharge. This is the debtor's only argument.

In this Chapter 7 case, the debtor will receive a discharge unless a party in interest objects to his discharge under §727 in a timely-filed adversary proceeding.  In the absence of such a proceeding, the Alimony Judgment or the Fee Judgment must be determined to be excepted from discharge under §523.  Relief from the automatic stay to enforce a debt is not warranted, of course, if a debt is subject to discharge.  However, even if excepted from discharge, the automatic stay may continue to prevent movant from enforcing the judgments; whether movant may proceed with enforcement of nondischargeable judgments is governed primarily by §362.

Here, there is no dispute that the Alimony Judgment is a domestic support obligation as defined in §101(14A) and that it is excepted from discharge under §523(a)(5).  Section 362(b)(2)

governs whether the automatic stay applies to a domestic support obligation.  Under that section, the automatic stay does not stay the collection of a domestic support obligation from property that is not property of the estate, but it does stay the collection of a domestic support obligation from property that is property of the estate except with respect to the withholding of income that is property of the estate or form the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute.  §§362(b)(2)(B) and (C).

A question exists as to whether relief from the stay is even necessary before movant can apply the ACSG Funds toward the Alimony Judgment, because the funds were generated and held at the time of levy by a corporate entity, and not the debtor.  Therefore it is not clear whether the ACGS Funds are property of the estate.  Ordinarily, funds held by a corporate entity that is owned by the debtor are not property of the estate.  Here, however, the parties have informed the court that the Circuit Court made a finding that ACSG is the alter ego of the debtor, and therefore the automatic stay may apply.  Similarly, a question exists as to whether relief from the stay is even necessary for movant to apply the 401(k) Funds toward the Alimony Judgment, because the 401(k) Funds are not listed in the debtor's schedules.  Therefore, it is not clear that they are property of the estate.  Further, stay relief is not necessary for movant to continue the post-petition wage garnishments, provided movant applies the garnished wages toward the Alimony Judgment, because the debtor's post-petition wages are not property of the estate.  Stay relief is necessary, however, for movant to apply the pre-petition garnished wages to the Alimony Judgment, because those wages are property of the estate.

In the interest of clarity of the record, the court will assume for purposes of the motion that the ACSG Funds and the 401(k) Funds are property of the estate, and will grant relief from the automatic stay to allow movant to disburse funds from the ACSG Funds and the 401(k)

Funds toward the Alimony Judgment. The court will also grant relief from the automatic stay to allow movant to apply any garnished pre-petition wages toward the Alimony Judgment.

With respect to the Fee Judgment, movant contends the Fee Judgment is excepted from discharge under §523(a)(2)(A) because the Circuit Court granted the judgment in connection with findings of fraud by the debtor. However, the determination of whether the Fee Judgment is excepted from discharge for fraud under §523(a)(2)(A) must be made by this court in a timely filed adversary proceeding. *See* §523(c). In such a proceeding, collateral estoppel principles will apply to any pertinent findings made by the Circuit Court, as appropriate under applicable law. Thus, the motion is denied to the extent it seeks relief from the stay to collect the Fee Judgment based on the contention that it is excepted from discharge under §523(a)(2)(A).

Movant also contends the Fee Judgment is excepted from discharge under §523(a)(5) because it is a domestic support obligation.[1] The determination of whether the Fee Judgment is a domestic support obligation need not be made exclusively by this court; the Circuit Court may also determine whether the Fee Judgment is a domestic support obligation and therefore is excepted from discharge. *See* 4 *Collier on Bankruptcy* ¶523.03 (16th ed. 2015) ("[T]he bankruptcy court has exclusive jurisdiction of most dischargeability determinations under subsections 523(A)(2), (4) and (6). For all other exceptions to discharge enumerated in section 523(a), jurisdiction may be exercised by either the bankruptcy court or the state or other nonbankruptcy court."). Accordingly, the court will grant relief from the automatic stay in the event movant chooses to seek a determination from the Circuit Court that the Fee Judgment is a domestic support obligation and therefore excepted from discharge.

---

[1] Numerous courts have held that attorney's fees awarded to one spouse may be a domestic support obligation. *See e.g. In re Silansky*, 897 F.2d 743 (4th Cir. 1990) (holding that attorney's fees ordered to be paid to former spouse's attorney was in the nature of support for §523(a)(5) purposes); *In re Blaemire*, 229 B.R. 665 (Bankr. D. Md. 1999) (holding that fees payable to appointed counsel for minor children were in the nature of support and excepted from discharge).

In sum, with respect to the Fee Judgment, movant may bring a timely adversary proceeding in this court seeking a determination that the Fee Judgment is excepted from discharge under §523(a)(2)(A).  Movant may also seek a determination by either this court or the Circuit Court that the Fee Judgment is a domestic support obligation and therefore excepted from discharge, under §523(a)(5).  However, until the Fee Judgment is determined to be excepted from discharge, stay relief to collect the Fee Judgment is not appropriate.  In the event the Fee Judgment is determined to be excepted from discharge, then whether further stay relief is necessary or warranted to collect the Fee Judgment will be determined at that time by this court.

Finally, the same principles apply to movant's request for stay relief to continue the wage garnishments.  As stated above, the debtor's post-petition wages are not property of the estate.  Therefore, to the extent movant applies the post-petition wage garnishments toward the Alimony Award, no stay relief is necessary.  However, to the extent movant seeks stay relief to apply pre-petition or post-petition wage garnishments toward the Fee Judgment, the request is denied for the same reasons stated above.

Accordingly, it is by the United States Bankruptcy Court for the District of Maryland, hereby

ORDERED, that movant is granted relief from the automatic stay to disburse the ACSG Funds and the 401(k) Funds toward satisfaction of the Alimony Award; and it is further

ORDERED, that movant is granted relief from the automatic stay to apply any pre-petition wage garnishments toward the Alimony Award; and it is further

ORDERED, that relief from the automatic stay is not necessary for movant to continue post-petition wage garnishments, provided the garnished wages are applied toward the Alimony Award; and it is further

ORDERED, that movant is granted relief from the automatic stay to seek a determination from the Circuit Court for Prince George's County of whether the Fee Judgment is a domestic support obligation and therefore excepted from discharge under §523(a)(5); and it is further

ORDERED, that movant is denied relief from the automatic stay to continue collection efforts on the Fee Judgment until such time as either the Circuit Court or this court determines that the Fee Judgment is a domestic support obligation and therefore excepted from discharge under §523(a)(5), or until this court determines it is excepted from discharge under §523(a)(2), and the request for relief from stay can be revisited as necessary once that determination is made; and it is further

ORDERED, that movant may continue to hold any levied or garnished funds until the Circuit Court or this court determines whether the Fee Judgment is excepted from discharge and, if so, whether stay relief is necessary or granted to collect the Fee Judgment.

**End of Order**



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND (GREENBELT)

In re: ANTHONY HARRIS

Cassandra Boston,          *     Case No. 15-21296

          v.               *     Chapter 7
Anthony Harris             *

---

**ORDER SUPPLEMENTING AND MODIFYING PRIOR SEPTEMBER 30, 2015 ORDER**

Creditor Cassandra Boston's Motion to Modify Order Granting Relief from Stay is

GRANTED.  This Court hereby amends its order of September 30, 2015 ("Order") to reflect the

following:

1) The automatic stay of 11 U.S.C. § 523 shall be lifted with respect to disbursement of any

   levies in effect at the time of the filing of Debtor's petition on August 5, 2015 (whether of

   Debtor's funds or ACSG funds) that were not addressed in the Order, in order to enforce

   the Alimony Judgment;

2) The Order is amended to note that the proper amount of the Fee Judgment is

   $114,125.00;

3) The Order and these modifications are effective immediately.

cc:

Debtor:

Anthony Harris
8200 Woburn Abbey Rd.
Glenn Dale, MD 20769

Debtor Attorney:

John Tjaden, Esq.
Law Office of John Tjaden
15227 Red Clover Drive
Rockville, MD 20853

Movant:

Kerry J. Davidson, Esq.
1738 Elton Road, Suite 113
Silver Spring, MD  20903

Trustee:

Steven H Greenfeld
Cohen, Baldinger & Greenfeld, LLC 2600
Tower Oaks Blvd. Suite 103
Rockville, MD 20852

**- End of Order -**